In the Matter of the Claim of JACK LESSNER et al., Appellants. UNITED STATES LINES COMPANY et al., Respondents; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, January 20, 1971.

**Waldman & Waldman** (*Martin Markson, Louis Waldman* and *Seymour M. Waldman* of counsel), for appellants.

*Lorenz, Finn & Giardino* (*James A. Flynn* and *Donato Caruso* of counsel), for United States Lines Company and another, respondents.

*Samuel A. Hirshowitz* (*Samuel Stern* and *Irivng Jorrisch* of counsel), for Martin P. Catherwood, as Industrial Commissioner, respondent.

HERLIHY, P. J. This is an appeal by the claimants from a decision of the Unemployment Insurance Appeal Board, filed August 29, 1963, which modified a determination of a Referee relating to the eligibility of claimants for benefits during the period of a strike.

The claimants herein are generally classed as "longshoremen" and all of them belong to the International Longshoremen's Association, AFL-CIO (ILA) with the exception of the claimant Lessner who was a watchman and belonged to a separate union. The record establishes and the board so found that at 12:01 A.M. on June 16, 1961 members of various unions representing seamen and on-board ship personnel went on strike against the American-flag steamship operators who were members of an association called the American Merchant Marine Institute. The respondents, United States Lines Co. (U. S. Lines) and Grace Line, Inc. (Grace) were two of the operators struck by the seamen. Grace and U. S. Lines conducted operations at the various piers where the claimants herein were generally employed at the time the strike commenced. As a ship docked at each of their piers the seamen would leave the ship and would then form picket lines at the entrance to the piers. There is testimony in the record to the effect that the longshoremen would not cross the picket lines (this does not include the watchman) and, accordingly, such ships as were not unloaded prior to the establishment of a picket line at its pier

were not able to discharge their cargo during the seamen's strike.

The claimants herein consist of workers who are in no way concerned with the seagoing aspects of shipping and these claimants are land based workers. Such of the claimants as are longshoremen were employed in the process of handling cargo either from the ship to the pier or the pier to the ship and also from storage areas on the pier into trucks and from trucks to storage areas on the pier. This appeal also involves claimants employed as " checkers " and these are clerical employees who are concerned with the record keeping as to incoming and outgoing cargo. The claimants also include three carpenters, a tractor driver, a painter and as noted hereinabove a watchman.

The record contains testimony that truck operators would not cross the seamen's picket lines and, accordingly, there were no trucks to be loaded or unloaded at the various piers subsequent to the establishment of a picket line thereon. The record as a whole supports the conclusion that whenever one union establishes a picket line at a pier the members of other unions will not cross the picket line either as a matter of general policy or in the case of the individuals because of a fear of reprisal.

All of the claimants herein who belong to the ILA are subject to a collective bargaining agreement as to employment which was entered into between their union and the steamship operators collectively as members of an association called the New York Shipping Association. Pursuant to that agreement and the general custom of the employment, it appears that the hiring of the claimants by the individual employers is on a day-to-day basis and is actually split into separate hirings for each 4-hour period.

The right to employment by the employees is based upon a seniority system which is somewhat complex. The cargo handlers (longshoremen) have both a general system of seniority and a specific system of seniority as to a particular pier. The first or top seniority group for longshoremen consists of those workers who become members of a " regular gang " at a particular pier and for the particular shipper who operates at that pier. When a ship is either loading or unloading those men whose names are on the regular gang list are the first ones to be called by the shipper to handle the cargo. Apparently there is also a " second " gang list and this gang would be called in if more than one gang were needed.

Beyond the gangs there are also extra laborers employed on an individual (non-gang) basis and these individuals are listed at

the pier and given seniority in hiring by the particular employer based upon the regularity of his service with that employer at that pier. All of the foregoing categories are actually hired by being told at the end of a particular day's employment that they are wanted for the following day; by being placed or posted on a list maintained by the employer for employment on the following day; and/or by telephoning the employer's answering service which automatically tells them what gangs and what seniority number of employees are required and when.

Besides the foregoing description of the system by which the workers secure employment and employment rights at a particular pier and/or for a particular employer, these workers can "shape-up" at hiring centers and receive employment from any employer whose hiring agents appear thereat and offer employment to the worker. However, within the hiring centers there is again a particular system of seniority which apparently relates to the pier where the worker has had employment in the past; the employment which the worker has had within the jurisdictional bounds of the particular hiring hall; and lastly, his individual seniority rating as an "A, B, or C" worker. Within the port of New York which in its entirety is the place of employment for any and all of the claimants herein there were foreign flag shipping operators who were not struck by the seamen's union and whose piers were not subjected to any pickets.

Most of the claimants herein had acquired seniority rights with the piers at which the respondent shippers were struck. However, this seniority would not be applicable in regard to those other piers and other parts of the port of New York where there was no strike in progress. It is apparently upon this basis that the board has found that the claimants lost their employment as a result of a strike in their establishment upon the date when a seamen's picket line was established at the pier at which the claimant could exercise his seniority rights and would have employment on a more or less regular basis.

Upon the present record the board has found factually that each pier constituted a separate establishment and that as to these employers the strike commenced at each such establishment upon the date a ship arrived and a picket line of seamen was established at such pier. The record contains sufficient facts to support the finding that a regular course of employment existed between the employers and the claimants involved upon this appeal and that, therefore, the board was not bound to follow the holding of *Matter of Burger* (*Corsi*) (277 App. Div. 234, affd. 303 N. Y. 654, 656) which based upon the "shape-up"

employment method utilized in 1948 affirmed a finding by the board that as a factual matter there was no regular employment relationship between the longshoremen and the ship owners.

The question of an employment relationship between the alleged employers and the claimants herein is one of fact and the record contains substantial evidence to support the board's finding. Furthermore, the question of whether or not the particular piers constituted an "establishment" was a question of fact for the board and the record contains substantial evidence to support the board's finding that each pier constituted a separate establishment. (See *Matter of Ferrara [Catherwood]*, 10 N Y 2d 1; *Matter of Sierant [Catherwood]*, 24 N Y 2d 675; cf. *Matter of George [Catherwood]*, 14 N Y 2d 234; *Matter of Blair [Catherwood]*, 28 A D 2d 1156.)

Upon the present record there is substantial evidence to support the finding that those claimants working for Grace Lines lost their employment on June 16, 1961, the initial date upon which the seamen's unions went on strike as picket lines were established at those piers upon that date.

However, the board has erred as a matter of law insofar as it has found that the claimants Di Meceli, Kinahan, Farrer, Donnelly, Kerins, and Lessner lost their employment because of a strike in their establishment upon the various dates when the seamen established picket lines at the piers of U. S. Lines. Each of these claimants was unemployed prior to the time when the picket lines were established at their particular piers or places of employment and, accordingly, it cannot be said that they lost their employment as a result of a strike in their establishment at the time when such strike occurred. (See *Matter of Burger, supra.*) The record does not support the finding of the board that the individual claimants referred to hereinabove are subject to suspension upon the dates when seamen's picket lines were established at the piers where such claimants individually worked. Although some of these claimants might be disqualified from benefits because they would not cross a picket line as of the dates when such lines were established, the board did not make such findings. The matter must be affirmed as to those claimants other than the ones specified hereinabove and remitted for further consideration of the particular cases of each of the specified individuals. It does not appear that the taking of further testimony is necessary unless the board should be so advised.

The decision should be affirmed, except as to claimants Donnelly, Di Meceli, Kinahan, Kerins, Farrer and Lessner, and, as to those individuals the decision should be reversed, and the

6

matter remitted for further proceedings not inconsistent herewith, without costs.

REYNOLDS, GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Decision affirmed, except as to claimants Donnelly, Di Meceli, Kinahan, Kerins, Farrer and Lessner, and, as to those individuals the decision is reversed and matter remitted for further proceedings not inconsistent herewith, without costs.